## JOHN H. SANDY, Respondent, v. CITY OF ST. JOSEPH, Appellant.

**Kansas City Court of Appeals, April 4, 1910.**

1. **NEGLIGENCE: Discharge of Water: Duty of Property-Owner.** A property-owner may improve his property, even though the improvement do injury to his neighbor, without creating a right of action in favor of such neighbor. If the injury results alone from the exercise of a right of ownership, it is *damnum absque injuria.* But if the right be exercised in a wanton, reckless or negligent manner, and thereby causes injury, the actor becomes a wrongdoer, since he violates the maxim "*sic utere tuo ut alienum non laedas.*"

2. **MUNICIPAL CORPORATIONS: Negligence: Discharge of Water.** A city cannot by a street improvement, collect a large body of water in one place, and then, by artificial means, throw it in a body upon a landowner, without being responsible in damages.

3. ———: ———: ———. Where a city grades its streets in such manner as to produce a deep pond and cause the waters therein to seep through to plaintiff's house, causing the same to sink and settle, the city is liable in damages.

Appeal from Buchanan Circuit Court.—*Hon. L. J. Eastin,* Judge.

AFFIRMED.

*W. B. Norris* and *O. E. Shultz* for appellant.

Under the pleadings and evidence defendant's demurrer should have been sustained. Burke v. Railway, 29 Mo. App. 370; Schneider v. Railway, 29 Mo. App. 68; Collier v. Railway, 48 Mo. App. 398; Johnson v. Railroad, 111 Mo. App. 378; Gray v. Schrieber, 58 Mo. App. 173.

*Alcid Bowers* for respondents.

A city cannot by street improvement collect a large body of surface water in one place and then by artificial means throw it in a body upon the landowner without being responsible in damages. Cannon v. City, 67 Mo. App. 467. A city that closes up catch-basins in the street, which catch-basins were necessary and were provided by it to carry off surface water that accumulates, without providing any safe way for such accumulated water to escape, and by reason thereof the water raises to such a height in the street as to flow over the curbing and on to private property to the damage of a landowner, is liable to such owner for such damage. Carson v. City, 53 Mo. App. 289; McInery v. City, 45 Mo. App. 296; Paddock v. Somes, 102 Mo. 238; McCormick v. Railroad, 70 Mo. 359; Rychlicki v. City, 98 Mo. 501; 2 Thompson on Negligence, 748.

JOHNSON, J.—Plaintiff sued the city of St. Joseph, a city of the second class, to recover damages for negligence in the making of certain street improvements by which surface water was collected in a body and precipitated on plaintiff's property to his injury. The answer is a general denial. A jury was waived and the court, after hearing the evidence, rendered judgment for plaintiff in the sum of $170. Defendant appealed.

Point is made by defendant that the petition "does not state a cause of action for the reason that it does

not charge that the city, by its act, accumulated surface water in a body and then cast it upon plaintiff." But we find the petition is not defective in this or any other essential particulars. The court made findings of fact as follows:

"1. The court finds that the plaintiffs at the commencement of this suit and at the date of the injury complained of were the owners of lot 4, in block 26, in St. Joseph Extension, an addition to the city of St. Joseph, Missouri; that said lot fronted west on Dewey avenue 50 feet; that Dewey avenue runs north and south and is a paved and improved street; that St. Paul street runs east and west intersecting Dewey avenue at right angles 100 feet south of plaintiff's property.

"2. That in the summer of 1908, the city of St. Joseph caused a dirt fill to be made in St. Paul street east of Dewey avenue, which fill was a solid earth embankment and extended about 140 feet eastward from Dewey avenue, the fill being from 15 to 18 feet high at the lowest point, which fill crossed a natural ravine that commenced north of plaintiff's property and extended southwardly across St. Paul street for a long distance. That St. Paul street descended to the east from a point some distance west of Dewey avenue, to said avenue and to the said ravine prior to the time of the making of said fill.

"3. That the intersection of Dewey avenue and St. Paul street is at a low point in Dewey avenue, the street rising from the intersection in both directions north as well as south for several blocks. That St. Paul street rises as you go west from Dewey avenue and is an unpaved street; that prior to the fill made in St. Paul street the surface water flowed down Dewey avenue from the north and from the south to St. Paul street; and also flowed east down St. Paul street on Dewey avenue and in consequence thereof surface water was accumulated from the north, south and west at the intersection of said two streets, and the defendant city,

in order to take care of the same, prior to the making of the fill in St. Paul street, placed six catch-basins in Dewey avenue at the intersection with St. Paul street which permitted all the water so accumulated to be gathered into a pipe drain laid below the surface of St. Paul street from Dewey avenue eastward to the ravine into which all the said waters were discharged.

"4. That at the time of the making of the fill in St. Paul street east of Dewey avenue, these six catch-basins were filled up or removed, and that said St. Paul street was raised east of Dewey avenue, and the water falling in St. Paul street, was carried west to the intersection with Dewey avenue. That in consequence of the grading of St. Paul street as aforesaid and the descending grade of St. Paul street west of Dewey avenue, and the descending grade in Dewey avenue from north to south to St. Paul street, and from south to north to St. Paul street, the surface water from a considerable area was gathered at the intersection of said streets, and in consequence of the fact that said six catch-basins and sewer-pipe formerly under St. Paul street had been taken out, or closed up by the city, the waters so accumulated had no means of escape and rose to such a height that they flowed over the top of the curb on the east side of Dewey avenue north of St. Paul street and accumulated in a pond in the ravine north of St. Paul street and were held there by the embankment or fill in St. Paul street, and rose to such a height that the waters in the pond thus formed were some fifteen feet deep and covered lot 6 and a portion of lot 5 in said block and extended up to within about ten feet of the plaintiff's house. That the plaintiff's house was partially built on made ground, and the water standing in said pool soaked through the embankment between it and the pond and undermined the foundation of plaintiff's house and caused the house to sink and settle, and plaintiff has been damaged by the water so accumulated

by the city to the·amount of one hundred and seventy dollars."

These findings, abundantly supported by evidence, compel a judgment for plaintiff. The rule invoked by defendant to escape liability thus was stated by this court in the recent case of Thompson v. Railroad, 137 Mo. App. 62: "The mere fact that an improvement erected by an owner on his premises may inflict an injury to the adjoining property, of itself, does not create a liability on the part of the owner to recompense his injured neighbor. To create a liability there must exist some abuse of the lawful right of an owner to use his property as he would. If the injury results alone from the exercise of a right of ownership, it is *damnum absque injuria*. But if. the right be exercised in a wanton, reckless or negligent manner and such perversion causes the injury, then the actor becomes a wrongdoer, since he violates the maxim *"sic utere tuo ut alienum non laedas."*

In the present instance, the act of the city amounted to an unjustifiable invasion of its neighbor's property and it falls within the rule applied by ELLISON, J., in Cannon v. City, 67 Mo. App. l. c. 370. "The city cannot, by street improvement, collect a large body of water in one place, and then, by artificial means, throw it in a body upon the landowner, without being responsible in damages."

It is unnecessary to discuss the declarations of law given by the court. The findings of fact are given the effect accorded a verdict of a jury and, as we have said, compel the judgment rendered by the court.

Affirmed.    All concur.